THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DYLAN BENDER and LINDSAY BENDER, <br><br> Plaintiffs, <br><br> v. <br><br> USAA GENERAL INDEMNITY COMPANY, <br><br> Defendant. | CASE NO. C22-1765-JCC <br><br> ORDER |

This matter comes before the Court on Defendant USAA General Indemnity Company's ("USAA") motion for summary judgment (Dkt. No. 41) and Plaintiffs' motion for partial summary judgment (Dkt. No. 45). Having considered the briefing and the relevant record, the Court GRANTS Defendant's motion and DENIES Plaintiffs' motion for the reasons explained herein.

**I.    BACKGROUND**

This insurance coverage dispute arises out of a car accident involving Lindsay Bender, one of two named Plaintiffs.[1] (Dkt. No. 1-1 at 2–3.) Most of the facts are not in dispute. (*See* Dkt. Nos. 49 at 2, 56 at 4.) During the drive that ended in the accident, Plaintiff completed one

---

[1] The other named Plaintiff, Dylan Bender, is the named insured here. (*See* Dkt. No. 44-2 at 4.) Ms. Bender was the party to the events described in this Order, thus the Court herein refers to Ms. Bender as "Plaintiff."

1  delivery for DoorDash, a food delivery service. (Dkt. Nos. 1-1 at 3, 52 at 2–3.) DoorDash drivers
2  take on deliveries using the DoorDash online platform (or "application"). (*See* Dkt. No. 43-2 at
3  17, 52 at 3.) A driver must be logged on to the application to accept a delivery, and so long as
4  they are logged on they may take on deliveries. (*See* Dkt. No. 43-2 at 17.) It is undisputed that
5  the collision at issue in this case occurred between 9:45 AM and 9:50 AM on December 1, 2021,
6  in Puyallup, Washington. (Dkt. Nos. 1-1 at 2, 43-2 at 15.) And Defendant presents unrebutted
7  evidence that Plaintiff was logged on to the DoorDash application at this time, and up until 10:18
8  AM. (Dkt. No. 43-3 at 1.)

   It is also undisputed that, immediately after the accident, Plaintiff called Defendant to file
a claim. (Dkt. No. 1-1 at 3.) Although Plaintiff cut the call short, she told Defendant she was
"doing a delivery . . . dropping off some things for someone . . . doing some [D]oor[D]ash."
(Dkt. No. 42-1 at 2.) Plaintiff later stated she was still logged on to the DoorDash application
when she called to file her claim because she was busy with complications from the accident.
(Dkt. No. 42-4 at 1.) She also submitted DoorDash records confirming that she logged on to the
delivery application at 8:56 AM that morning and logged out at 10:18 AM. (Dkt. No. 42-4 at 3.)

   The automobile insurance policy with Defendant has a "ride sharing" exclusion. (Dkt.
No. 44-2 at 12.) The policy defines ride sharing as "transportation of persons or property in
conjunction with a Transportation Network Company." (*Id.*) It then defines "Transportation
Network Company" as entities that provide such deliveries using an online application and
drivers' personal vehicles. (*Id.*) The policy excludes coverage when the insured is logged on to a
Transportation Network Company's application and available to accept deliveries. (*Id.*)[2]
Ultimately, based on this exclusion, Defendant denied Plaintiff's claim, as she was logged on to
the DoorDash application at the time of the accident. (Dkt. No. 42-5 at 1–2.)

---

[2] Defendant offers gap coverage that covers drivers during this time. (Dkt. No. 44-2 at 42.) However, Plaintiffs did not have this gap coverage. (*See generally id.* at 59.)

1  Plaintiffs brought suit for breach of the insurance contract. (Dkt. No. 1-1 at 7.) They also
2  asserted bad faith in Defendant's investigation and denial of her claim, as well as statutory
3  violations of the Washington Consumer Protection Act and Insurance Fair Conduct Act. (*Id.* at
4  7–11.) Defendant removed the case to this Court under diversity jurisdiction. (Dkt. No. 1 at 2–4.)
5  Plaintiffs now move for partial summary judgment. (*See generally* Dkt. No. 45.) Defendant, for
6  its part, moves for summary judgment on all claims, arguing that the denial of coverage was
7  consistent with the insurance policy's unambiguous language (and therefore also reasonable).
8  (*See generally* Dkt. No. 41.)

## II.  DISCUSSION

### A.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Ordinarily, the Court considers facts submitted by the parties in support of their motions. *Id.* at 56(c). But the parties agree that the facts here are not in dispute. Instead, this is a case well-suited for decision as a matter of law because Washington courts[3] interpret contracts as a matter of law. *See McDonald v. State Farm Fire and Cas. Co.*, 837 P.2d 1000, 1003 (Wash. 1992). The primary questions are whether (a) the insurance policy, by its terms, excluded Plaintiff's accident from coverage and (b) whether Defendant reasonably investigated the claim. The Court considers each in turn.

### B.  The Insurance Contract is Unambiguous

A court must give a contract the plain meaning supplied by its express terms if the terms are unambiguous. *Davis v. N. Am. Accident Ins. Co.*, 254 P.2d 722, 726 (Wash. 1953). The terms of a contract are to be interpreted in their entirety and it is presumed that the parties have read

---

[3] In state lawsuits removed to federal court, the law of the forum in which the federal court sits applies. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Accordingly, Washington law applies to this dispute.

them. *See Skagit State Bank v. Rasmussen*, 745 P.2d 37, 39 (Wash. 1987). With an insurance contract, any ambiguities in coverage are resolved in favor of the insured. *Weyerhaeuser Co. v. Aetna Cas. and Sur. Co.*, 874 P.2d 142, 145 (Wash. 1994). The insurer has the burden of showing that the claim is excluded under specific and unambiguous policy terms. *Am. Star Ins. Co. v. Grice*, 854 P.2d 622, 625 (Wash. 1993). If the terms are unambiguous, then denial of coverage is proper.

Here, Defendant points to the ride sharing exclusion in the policy. (Dkt. No. 41 at 15–18.) According to the policy, ride sharing is defined to include deliveries of "persons *or* property." (Dkt. No. 44-2 at 12) (emphasis added). Deliveries of tangible property, such as "some things for someone," (Dkt. No. 42-1 at 2), are therefore excluded. "Transportation Network Companies"—defined immediately after ride sharing—broadly covers all "transportation services" that connect clients with drivers. (Dkt. No. 44-2 at 12.) By its express terms, this includes DoorDash.[4]

Applying this definition, the exclusion "applies during the time the covered person is logged on to the Transportation Network Company's online-enabled application or platform and available to accept a passenger or delivery assignment, whether or not a passenger or delivery has been accepted." (Dkt. No. 44-2 at 12.) Reading the policy in its entirety, the exclusion depends on the relationship between the insured and the company rather than with any client. The excluded period is also unambiguously objective: it is when the insured is logged on to the company's application and could accept delivery assignments there. *See Maxwell v. James River Fire Ins. Co.*, 401 F. Supp. 3d 1183, 1188–89 (D. Colo. 2019) (finding similar automobile policy and ride sharing exclusion unambiguous). Based on the undisputed time logs here, Plaintiff was

---

[4] While DoorDash is not listed as an example in the policy definition, at least one of the example companies delivers both persons and property. (*See* Dkt. No. 44-2 at 12) ("examples of a Transportation Network Company include, but are not limited to Uber, SideCar and Lyft"). The Court takes judicial notice, *see United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003), that Uber provides passenger services as well as food delivery services. Uber, https://www.uber.com/us/en/about/uber-offerings (last visited Jan. 27, 2025).

logged on to the DoorDash application and able to accept deliveries on the application. She was therefore excluded from coverage under the unambiguous terms of the insurance policy.

While the Court need not look to extrinsic evidence here, information on Defendant's website and sent to Plaintiffs further support this interpretation. (*See* Dkt. Nos. 44-2 at 42, 46-7 at 2–5) (explaining that application-based delivery drivers may need gap coverage and are not covered when logged on to the application). And a relevant Washington statute permits policy exclusions while ride share drivers are logged on to applications like DoorDash. *See* RCW 46.72B.180(6). Plaintiffs try to use other statutory definitions, (Dkt. No. 45 at 24) (citing RCW 46.04.652), but those definitions only apply to within the four corners of that statute, not this contract. *See* RCW 46.04.010 ("Terms used in this title shall have the meaning given to them *in this chapter*") (emphasis added). There are no ambiguities in the language here, no "tangled webs," (*see* Dkt. No. 57 at 1), only specific definitions and specific terms.

Plaintiffs do not dispute the DoorDash time logs that show she was logged on at the time of the accident. (Dkt. No. 49 at 13–14.) Instead, she told Defendant that she had not logged out because she was dealing with the collision. Even if that is true, it only explains why she was logged on for half an hour *after* the collision, not at the time it occurred. Plaintiff also disputes whether she intended to accept or make additional deliveries at the time of the accident, (*id.*), but she has offered no facts to support this bare assertion. More importantly, her intent is irrelevant because she was logged on to DoorDash and could accept deliveries on the application. The exclusion's terms are objective, not subjective.

As described above, as a matter of law, the insurance policy unambiguously excludes coverage here. Therefore, there was no breach of contract and Defendant has no duty to indemnify Plaintiffs here. *See Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013).

C. **The Claim was Handled Reasonably**

Plaintiffs' remaining claims (for bad faith and violations of state statutes) turn on the reasonableness of Defendant's claim handling process. First, so long as the insurer made a reasonable denial under the policy, there is no liability for bad faith, *see Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002), or under the Insurance Fair Conduct Act, *see Perez-Crisantos v. State Farm Fire and Cas. Co.*, 389 P.3d 476, 479–80 (Wash. 2017). As discussed above, Defendant's interpretation was more than reasonable: it was the interpretation dictated by the express terms of the contract. Therefore, Defendant is not liable for a bad faith denial or unreasonable conduct under the Insurance Fair Conduct Act.

Second, if the Defendant conducted a reasonable investigation into the claim, then there is no liability for unfairness or deception under the Consumer Protection Act. *See Overton*, 38 P.3d at 330. "The problem arises when the insurer fails to investigate" the claim. *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1235 (W.D. Wash. 2008). The claim here may have been denied quickly, but Defendant certainly conducted more than "no investigation at all." *Id.* at 1236. At the outset, Plaintiff told Defendant she was working for DoorDash before she cut the call short. And Defendant continued to investigate the claim when Plaintiff challenged the denial by asking additional questions and putting additional information on file. At each of Plaintiffs' submissions, Defendant upheld the denial because the additional information (such as the DoorDash time logs and Plaintiff's e-mail stating she had not logged out) supported denial. (*See, e.g.,* Dkt. No. 46-2 at 11–12) ("at this time denial stands"). Defendant's investigation was reasonable at each stage, therefore they are not liable under Washington's Consumer Protection Act.

**III. CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 41) is GRANTED and Plaintiffs' motion for partial summary judgment (Dkt. No. 45) is DENIED. The

ORDER
C22-1765-JCC
PAGE - 6

1 case is DISMISSED with prejudice.

2

3        DATED this 29th day of January 2025.

4

5

6        _____
         John C. Coughenour
7        UNITED STATES DISTRICT JUDGE

ORDER
C22-1765-JCC
PAGE - 7